O’NIELL, J.
The defendants have appealed from a judgment rendered against them recognizing the plaintiff in this petitory action to be the owner of two-thirds of a tract of land in the appellants’ possession. In answer to the appeal the plaintiff prays that the judgment be amended by allowing her demand for two-thirds of the rental value of the property.
The important facts of the case are not disputed. James T. Watts, the father of the plaintiff and of the two defendants, was married to Julia Ann Blazier on the 24th of October, 1858. Soon after their marriage, that is, some time within three years thereafter, they went into possession of the property in contest, which then belonged to J. F. Pargoud, and built their residence there. The plaintiff was born of that marriage in 1861, on the premises now in dispute, and the family of three resided there until the death of Mrs. Julia Ann Watts, which occurred in *687 1863. James T. Watts and his child, the plaintiff, continued to reside on the premises until October 12, 1865, when he married Amanda Herring, who took up her residence there with her husband and his child. The two defendants are the only issue of this second marriage of James T. Watts. The defendant Mrs. Mary Amanda Watts, now the wife of E. L. Berry, was born on the premises in dispute in 1866, and the other defendant, Francis James Watts, was horn there in October, 1868. The family of five continued to reside in the house which James T. Watts had built during the, first community on the premises in dispute until his death, which occurred on the 25th of December, 1868. Mrs. Amanda Herring Watts, the widow, was appointed administratrix of the succession of her deceased husband, and was confirmed as natural tutrix of her two minor children, the present defendants, in January, 1869. A. Lazare was appointed as their undertutor. D. B. Sandford, whose wife was the paternal aunt of the plaintiff, was appointed tutor and G. W. McFee undertutor of the plaintiff, in August, 1869, and she then went to reside with her tutor and his wife, her aunt. She says that she was sent to them by her stepmother, who told her she had no right to remain at her former home.
The estate of James T. Watts consisted of his half interest in the house he had built on the land in dispute and certain personal effects, all belonging to the first community. The land was not put on the inventory, which contains a notation that the land was not inventoried because it had not been paid for. All of the property of the first community, including the residence on the land in contest, was sold at public auction by the sheriff to pay debts. The residence and certain personal effects were purchased by Mrs. Amanda I-Ierring Watts, in satisfaction of the $1,000 to which she was entitled as the widow in necessitous circumstances; and she paid to D. B. Sandford, tutor, $265.92 which she conceded to be due to the plaintiff as heir of the first Mrs. Watts from the sale of the property of the first community. The widow waived whatever right of usufruct she had on this sum of money, and the tutor of the minor child gave his receipt for it.
Mrs. Amanda Herring Watts and her two minor children, the defendants, continued residing on the premises in dispute. On the 24th of March, 1873, J. F. Pargoud, the owner of the land in contest, appeared before the deputy recorder of the parish of Ouachita, where the property is situated, and executed an authentic act of donation of the land to the two defendants, then aged 5 and 7 years. It is recited in the donation that the donor grants, gives, and donates the land unto Mary A. Watts and Francis J. Watts, children of James T. Watts, minors, represented by Mrs. Amanda J. Watts, as tutrix, in consideration of the love and respect which the donor had for his deceased friend, James T. Watts. The donation was accepted by the tutrix for her children, and, as appears from the certificate, was recorded on the 24th of March, 1873, the day it was signed. Thereafter the widow, Amanda Herring Watts, married a Mr. Hutson, and they had children. She and her husband, their children, and the present defendants continued to occupy the premises in contest until the death of Mrs. Hutson, mother of the defendants, which occurred in 1895. Thereafter Mr. Hutson and his children moved away; and the defendants continue to occupy the premises together until 1905, when they made and recorded a partition of the land, and each built a new residence, Francis J. Watts taking the north half, and Mrs. Mary A. Watts Berry taking the south half, both fronting on the river. Mrs. Berry has occupied the residence on the south half of the land in contest ever since it was built. Francis J. Watts has leased his house to a tenant. The old residence built by James T. Watts during his first marriage has been leased to tenants since the de *689 fendants built their new residences, and the defendants have been collecting the rents.
When this suit was filed, the defendants had been occupying the property sued for continuously from the time they were born there, and had possessed it under an authentic act of conveyance, translative of this property and duly recorded, for 39 years.
The plaintiff was more than 51 years of age when she instituted this suit, and had not had possession of the premises nor asserted any claim to it for 43 years. During all these years, except for about 9 months that she spent in New Orleans, she resided in Monroe, immediately across the river from her old home, and visited her stepmother and the defendants there.
The theory upon which the judgment was rendered in favor of the plaintiff, recognizing her to be the owner of two-thirds of this property, is this: That, when ner father James T. Watts, built a residence on the land, during his first marriage, he took possession of the land as owner, and that that possession, which was continued by him until his death, and thereafter by his widow and her children, inured to the benefit of the first community and completed a title in that community by the prescription of 30 years. The district judge cites the decision of this court in the case of Miller v. Vivian Oil Co., 131 La. 766, 60 South. 236, Ann. Cas. 1914A, 1028, in support of the view that the defendants could not acquire a title by the donation from J. E. Pargoud, adverse to the plaintiff, and that that title also inured to the benefit of the first community. That decision merely holds that co-owners owe a reciprocal obligation to protect and preserve their common ownership, and that one cannot buy an outstanding claim except for the benefit of the joint ownership and subject to the obligation of the co-owners to bear their share of the cost.
In the present case, however, there was never a joint ownership in the plaintiff and defendants. Pargoud had suffered the father of the plaintiff and defendants, and, after his death, the mother of the defendants, to occupy the land in dispute for only 15 years. It cannot be presumed that he would have permitted the defendants and their mother to remain in possession of this property 15 years longer if he had not donated it to the defendants. On the contrary, it must be assumed, from the fact that he donated it to them, that he regarded himself as the owner and was only suffering them to occupy it until 'he gave it to them.
The theory on which the plaintiff claims to have acquired title to this property by prescription is not correct. The only reason assigned by her for failing to assert her claim during the 31 years of her majority is that she could not heretofore find a lawyer who would take the ease. Minor children, being incapable of exercising a will, cannot acquire by themselves the possession of property; but they may acquire through the medium of their tutor. R. C. G. 3439. During the minority of the plaintiff and defendants her tutor did not possess this property, but their tutrix did. And she admits that she knew from the time she was 7 years old that the defendants’ tutrix did not recognize that she-had any claim upon the property. If it could be conceded that possession for 15 years without any title created an imperfect co-ownership in the plaintiff and defendants, it must be borne in mind that the rights of one co-owner may be lost to another by the prescription of 30 years. Article 3515 of the-Civil Code provides that a person who has a title for one half an estate may prescribe for the other half, for it may be that a new title has transferred the ownership of the property to him, or that he has acquired it without title by 30 years’ possession.
The pleas of prescription of 10 and 30-years filed by the defendants must prevail.
It is therefore unnecessary to consider the questions of irregularity or illegality of the- *691 sale of the old residence to the administratrix, Mrs. Amanda Herring Watts.
The judgment appealed from is annulled and reversed, and it is ordered and decreed that the plaintiff’s suit be dismissed at her cost.